[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, than Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to `off-line' deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks, claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of `off-line' deposit account claims, including, without limitation, those powers enumerated in Rhode Island General Laws § 8-2-11.1 (1985 Reenactment)."
R.I.G.L. 8-2-11.1 provides, in pertinent part, that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him; (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above, a hearing was held on the above referenced claim on July 1, 1992. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
This claim results from a deposit in the amount of Ten Thousand Dollars ($10,000) made by Claimant on October 23, 1989 at the Pocasset Avenue branch of Heritage. It is Claimant's contention that on that date she gave the money to Mr. Raymond Marotto an employee of Heritage and was given in return a passbook with Account No. 01-01000002. All entries in the passbook were handwritten by Mr. Marotto.
At some time during August of 1990, Claimant testified that she directed a friend, who had introduced her to Heritage, to withdraw Five Thousand Dollars ($5,000). However, since Claimant could not find the passbook, no entry for the withdrawal was made. Claimant has acknowledged that she did receive the money in question and therefore makes a claim for Five Thousand Dollars ($5,000) which she attempted to withdraw after Heritage closed. Payment was refused because Heritage records do not reflect the existence of such an account.
Claimant maintains that although she did in fact later open an on line account at Heritage, she was unaware that the account in question was anything other than a normal passbook account opened in the regular course of Heritage business.
This Court disagrees. Raymond Marotto testified that Claimant intended to place money in Heritage knowing that the account would not be in the regular course of business but rather as a place to hide funds from some unspecified third party. In fact, Marotto claims that this non-traditional banking "service" was provided to others, including the friend who originally accompanied Claimant when the account was opened, at the direction of Joseph Mollicone, Jr. It is the testimony of Mr. Marotto, and not that of the Claimant, that the Court finds credible in this case.
It is the finding of this Court that Claimant, Fatima Finamore, knew that the money she gave to Mr. Marotto would not be treated as a savings deposit at Heritage. Her intention was to hide the funds from third parties and as a result entered into a relationship other than that of a depositor.
The term "deposit" is defined at 12 U.S.C. § 1813 (1), which states in pertinent part as follows:
 1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association, in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities, funds held to meet its acceptances or letters of credit, and withheld taxes; Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (1)(1), it must be shown that: (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course of business (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
In the instant case, Claimant did place "hard earnings" with Heritage but not in the usual course of business. Therefore, Claimant's account was not a deposit account and is not entitled to priority. Rather, Claimant stands only as a general unsecured creditor of Heritage.
Counsel will prepare an order in accordance with this decision.